UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAX TRUCKING, LLC,

        Plaintiff/Counter-Defendant,

v.

LIBERTY MUTUAL INSURANCE
CORPORATION,

        Defendant/Counter-Plaintiff.

_____/

CASE NO. 1:12-CV-60

HON. ROBERT J. JONKER

## OPINION

This is a dispute between Max Trucking, LLC ("Max Trucking) and LM Insurance Corporation ("Liberty Mutual") over premiums for workers compensation coverage. Liberty Mutual formerly provided workers compensation insurance to Max Trucking. Max Trucking asserts that Liberty Mutual charged it higher premiums than it should have because Liberty Mutual mistakenly determined that certain truck drivers associated with Max Trucking were employees of Max Trucking under Michigan's workers compensation insurance laws. Liberty Mutual disagrees and seeks payment of premiums it contends Max Trucking owes it. The parties agree that the dispute hinges on whether under Michigan's workers compensation insurance laws the truck drivers at issue are properly categorized as employees or independent contractors. The parties presented evidence and argued the merits of their positions at a bench trial held February 5, 2014. At the close of the bench trial, the Court took the matter under advisement. This opinion constitutes the Court's findings of fact and conclusions of law under FED. R. CIV. P. 52.

**Factual Background**

*1.    The Parties*

Max Trucking transports dry goods and freight by truck throughout the United States.  Max Trucking maintains a staff of six dispatchers at its headquarters in Kentwood, Michigan.  Max Trucking employs or contracts with drivers throughout the United States.  About twenty of these drivers are based in Michigan.

Max Trucking has a written contract with each of its drivers.  The contracts for the drivers at issue in this case are part of the trial record.  The contracts detail terms on which Max Trucking hires drivers to transport commodities on behalf of Max Trucking.  The contracts suggest that the individuals contracting with Max Trucking may opt to hire other drivers to perform the services the contracts describe, but in actual practice, the individuals who enter these contracts with Max Trucking are the drivers themselves.  The contracts provide that the drivers will use motor vehicles the drivers own or are leasing from Max Trucking to load, transport, and unload commodities that Max Trucking makes available to the drivers for this purpose.  The contracts describe the terms of payment from Max Trucking to drivers for transporting commodities, outline costs the drivers will bear, and specify regulatory requirements with which the parties agree to comply.  The contracts recite that the drivers are independent contractors and not employees of Max Trucking.  The contracts also recite that the drivers are responsible for obtaining their own workers compensation coverage, and that Max Trucking will not cover them.  There is no evidence, however, that any driver actually obtained his or her own coverage, and the Court finds as a matter of fact that no driver obtained coverage for himself or herself.

2

Dispatchers have regular contact with drivers associated with Max Trucking based in Michigan and other states. The dispatchers monitor reports of loads of freight available for transport and delivery. When the dispatchers identify loads they believe Max Trucking drivers are available to transport and deliver, they contact drivers and offer the opportunity to take on these loads. The drivers may accept or decline the opportunity. On accepted loads, Max Trucking and the driver divide the amount paid for each individual job, with Max Trucking taking 10% - 12% and the driver taking the remaining 88% - 90%. Drivers must pay all expenses associated with the transport, including fuel, out of the driver's share of the proceeds. Max Trucking may advance expenses from time to time, but the driver is always ultimately responsible. If expenses exceed the percentage the driver is paid for the job, the driver bears the loss. Max Trucking receives its 10% - 12 % share of the fee paid regardless of the expenses the driver incurs.

Some drivers associated with Max Trucking owned and operated their own trucks before Max Trucking. This case focuses on the 16-18 drivers in Michigan who acquired their trucks through a financing mechanism with Max Trucking. These drivers lease trucks from Max Trucking with the understanding that at the end of the lease term, they may purchase the tractor-trailers for a single dollar. The drivers pay Max Trucking – in addition to all the expenses incurred on an individual load – a monthly payment to Max Trucking for lease of the truck. A written contract governs each of these lease-purchase arrangements. The arrangement is essentially a financing vehicle in which a driver acquires a truck on the strength of Max Trucking's credit, and then bears

the cost of acquisition through monthly lease payments to Max Trucking.[1]  These drivers are effectively economically dependent on Max Trucking for their ability to operate as truckers.

Michigan's Worker's Disability Compensation Act, MICH. COMP. L. §§ 418.1-418.400 (the "WDCA"), requires employers in Michigan to maintain workers compensation insurance coverage for their employees.  If an employer is unable to obtain workers compensation insurance through the voluntary market, the employer may purchase workers compensation insurance through Michigan's involuntary market.  The Michigan Workers Compensation Placement Facility (the "Facility") administers the involuntary market in Michigan.  Liberty Mutual, an insurance company, provided workers compensation through the involuntary market in Michigan to Max Trucking.

2.  *The Dispute*

In approximately 2006, Max Trucking applied for workers compensation insurance in the involuntary market through the Facility.  Liberty Mutual received the request from the Facility and issued a policy to Max Trucking.  Liberty Mutual renewed the policy annually for several years.  Effective December 5, 2010, Liberty Mutual issued a renewal policy with coverage dates from December 5, 2010 through December 5, 2011 (the "WC 010 Policy").  When the WC 010 Policy expired on December 5, 2011, it was renewed for an additional year (the "WC 021" Policy").

Around this time, Liberty Mutual audited Max Trucking and determined that the Michigan-based drivers who leased trucks from Max Trucking (hereafter referred to as the "drivers") were

---

[1]The contract documents are not always consistent.  At times they appear to document a sale-leaseback arrangement in which a driver purchases a truck from Max Trucking on an installment contract, and leases the truck back to Max Trucking.  At other times, they appear to document a driver-purchaser agreement in the form of a lease from Max Trucking to the driver.  In all cases, though, the economic reality is the same: Max Trucking acquires a truck on the strength of its own credit, and an individual driver then bears the cost of purchase in the form of monthly payments to Max Trucking.

employees, not independent contractors, for purposes of Michigan's workers compensation laws. Based on this determination, Liberty Mutual increased Max Trucking's policy premium. Max Trucking disputes the propriety of the premium increase and has not paid Liberty Mutual amounts associated with the premium increase. Late in 2011, Liberty Mutual cancelled the WC 021 Policy. Early in 2012, Max Trucking filed this lawsuit seeking a declaratory judgment that determines the drivers are not employees of Max Trucking but are independent contractors for purposes of the WDCA. Max Trucking also seeks declaratory judgment that Liberty Mutual is not entitled to increased premiums associated with the drivers and that Max Trucking is not obligated to carry workers compensation insurance for the drivers under the WDCA. Liberty Mutual seeks unpaid premiums it claims Max Trucking owes it under the WC010 and WC021 Policies.

### Legal Standards and Analysis

MICH. COMP. L. § 418.161(1) defines "employee" to include, among others:

(l) [e]very person in the service of another, under any contract of hire, express or implied[;]

and

(n) Every person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury, if the person in relation to this service does not maintain a separate business, does not hold him or herself out to and render service to the public, and is not an employer subject to this act.

A special panel of the Michigan Court of Appeals recently concluded that all three of the statutory criteria in subsection (n) must be shown for an individual to avoid the "employee" classification. *Auto-Owners Ins. Co. v. All Star Lawn Specialists Plus Inc.*, 303 Mich. App. 288, 845 N.W. 2d 744 (2013) (*overruling Amerisure Ins. Co. v. Time Auto Transp. Inc.*, 196 Mich. App. 569, 493 N.W.2d 482 (1992)). Accordingly, an individual is an employee for statutory purposes if he or she works for

hire, unless the individual in relation to the service (1) maintains a separate business; (2) holds him

or herself out to and renders service to the public; and (3) is an employer subject to the WDCA.

Section (n) of the statute states further that

> [o]n and after January 1, 2013, services are employment if the services are performed by an individual whom the Michigan administrative hearing system determines to be in an employer-employee relationship using the 20-factor test announced by the internal revenue service of the United States department of treasury in revenue ruling 87-41.

MICH. COMP. L. § 418.161(1)(n).   Under this provision, if the Michigan administrative hearing

system treats an individual as an employee for Internal Revenue Service purposes, he or she is

automatically treated as an employee for WDCA purposes.

> ### 1.   Employment Status

The Court concludes that the Michigan drivers at issue in this case are employees, not

independent contractors, for workers compensation purposes.   No one disputes that the drivers work

for hire for Max Trucking, and Max Trucking cannot establish that the escape conditions of Section

418.161(1)(n) apply to the drivers.   To the contrary, the Court finds that none of the drivers at issue

maintains a separate trucking business; holds himself out to the public as a trucking business; or

qualifies as an employer under the WDCA.   The trucks at issue are all registered in Max Trucking's

name.   Max Trucking provides liability and physical damage insurance coverage and advances fuel

and repair payments to the drivers, eventually charging costs back to the drivers.   The drivers have

the means necessary to perform the services for Max Trucking only because Max Trucking provides

these things up front, even if the costs are ultimately charged back to the drivers.   The drivers may

have the theoretical permission to work for other carriers, but the drivers in fact work exclusively

– or almost exclusively – for Max Trucking.   Most importantly, Mr. Kovacevic, Plaintiff's General

Manager, testified that the drivers at issue get their trucks only on the strength of Max Trucking's credit. Max Trucking's expert witness, Mr. Westerhof, testified similarly that the drivers lack a credit or asset base sufficient to obtain their trucks independently. They need the balance sheet of Max Trucking to acquire a truck. None of the drivers is himself an employer under the WDCA, and none has obtained his or her own workers compensation, or other equivalent, coverage. For workers compensation purposes, the drivers are employees.

Max Trucking's arguments to the contrary fail. Max Trucking emphasizes that the drivers enter agreements that recite independent contractor status, and it contends that these agreements actually establish such status. The Court disagrees. The recitals of the agreement are not controlling, especially when the economic reality of the relationship is to the contrary. *See, e.g., Peno Trucking, Inc. v. C.I.R.*, 296 F. App'x 449, 460 (6th Cir. 2008) ("[A]s noted by the Tax Court, '[i]f the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial. Thus, if such relationship exists, it is of no consequence that the employee is designated as a partner, coadventurer, agent, independent contractor, or the like.'") (quoting 26 C.F.R. § 31.3121(d)-1(a)(3)). Max Trucking also stresses that the drivers are free to drive for other carriers if they so desire. That may be theoretically true, but it is not what happens in fact. The evidence reflects that only one driver has actually done so, and that driver ceased working for Max Trucking at that point. All of the other drivers drive for Max Trucking alone, and the drivers receive all of their dispatches from Max Trucking. Moreover, the drivers obtain the essential tool for their job – the truck itself – only on the strength of Max Trucking's credit. Even Plaintiffs's expert admits the drivers do not have credit or liquidity on their own sufficient to acquire the truck and operate as independent truckers.

Mr. Kovacevic, Plaintiff's General Manager, testified that Max Trucking has attempted to structure its relationship with the drivers as an independent contractor relationship precisely to avoid having to provide workers compensation coverage to the drivers. That is precisely the problem. None of the drivers obtained their own workers compensation coverage or other coverages like it, such as individual disability policies or occupational accident coverage. Max Trucking does not cover them either. Yet they obviously run the daily risk of work-related injury, both in the short and long term. A business like Max Trucking cannot purposely structure its operations in a way that leaves the workplace injury risk unprotected. The workers compensation statute is written broadly to prevent that and to ensure that the risk is properly covered.

Max Trucking also asserts that under the 20-part IRS test to which section (n) refers, the drivers are independent contractors, not employees, and that the drivers are therefore independent contractors for worker's compensation purposes. Even assuming the 20-part IRS test applies, it does not change the result in this case. First, the reference to the 20-part test simply creates an additional basis on which an individual may qualify as an employee for worker's compensation purposes. In other words, after the effective date of January 1, 2013, all individuals who are W-2 employees for IRS purposes are automatically workers compensation employees too. But that does not mean that anyone receiving a 1099 for tax purposes is not an employee for workers compensation purposes. The statute does not say that, and there are good reasons that the State may define "employee" for workers compensation purposes more broadly than the IRS does for W-2 purposes. Second, even under the 20-factor test, the factors weigh in favor of finding employee and not independent contractor status. The point of the three-part test, as well as the 20-part test, is to expose the

economic reality of the working relationship and treat it accordingly.  Here, the economic reality reflects that the drivers are employees of Max Trucking, for reasons already summarized.

Based on all of the evidence presented, and for these reasons, the Court concludes that the drivers are employees, not independent contractors, under the WDCA.

### 2.    Damages

Liberty Mutual seeks $101,592 in unpaid insurance premiums it claims Max Trucking owes it.  Liberty Mutual calculates the damages by applying the standard manual rate for truck drivers to the applicable payroll.  The parties agree on the manual rates in effect for the relevant time periods. What the parties do dispute is the proper amount of covered payroll.  Liberty Mutual says the proper amount is one-third of the total amount of money paid by Max Trucking to the truckers, as reflected on the 1099 forms for the affected truckers.  Liberty Mutual agrees this is only an estimate of "wages," but it says the estimate is consistent with the facility rules and Liberty Mutual practice: namely, a one-third rule of thumb.  Max Trucking says the one-third rule of thumb overstates the wage base, and that the proper amount is what the truckers actually clear as income after deducting all expenses.  Max Trucking has not provided an exact accounting but argues through its expert that the amount should be no more than 10% of the gross revenues reported on the affected 1099s.

The Court finds by a preponderance of the evidence that Liberty Mutual's calculations are correct.  First, the only evidence from anyone who actually works in the workers compensation insurance business weighs in favor of Liberty Mutual.  The testimony is unrebutted that the one-third rule of thumb applies in translating gross revenues on the 1099s to wage base for workers compensation purposes.  Second, Max Trucking's arguments to the contrary rest on the testimony of a CPA who is not a workers compensation expert and who has not even reviewed the coverage

manual.  Finally, the risk of uncertainty fairly falls on Max Trucking.  It is in the best position to treat the truckers as employees, and to document "wages," as well as other business expenses.  But it has not done so either contemporaneously, or even for purposes of this case.  Accordingly, the Court credits Liberty Mutual's evidence on damages and finds that Liberty is entitled to $101,592 in damages for unpaid premiums due.

Judgment will enter accordingly in favor of Defendant/Counter-Plaintiff Liberty Mutual and against Plaintiff/Counter-Defendant Max Trucking.

Dated:    July 31, 2014            /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   UNITED STATES DISTRICT JUDGE